IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**EBONY COWHERD,**

    **Plaintiff,**

      v.                                        Case No.  07-2558-JWL

**ROBERTO AGUIRRE RUBI, et al.,**

    **Defendants.**

**MEMORANDUM AND ORDER**

This lawsuit arises out of a fall by plaintiff Ebony Cowherd at her place of employment, LabOne, Inc.  At the time of the incident, LabOne had contracted with defendant Roberto Aguirre Rubi d/b/a Rubi Janitorial Services to perform janitorial and cleaning services.  Plaintiff Cowherd asserts a claim for negligence against defendant Rubi, the current operators of the business, and one of the business's employees who wet-mopped the floor on the day in question and allegedly failed to place a "wet floor" sign or other warning in the area.  This matter comes before the court on the motion of defendant Roberto Aguirre Rubi to quash service of process (doc. #18).  For the reasons explained below, this motion is denied.

Plaintiff claims that defendant Aguirre Rubi was served in this action when a process server left a copy of the summons and complaint at his "dwelling house or usual place of abode with someone of suitable age and discretion who resides there."  Fed. R. Civ. P.

4(e)(B); *see also* Fed. R. Civ. P. 4(e)(1) (individual can be served as permitted by state law); K.S.A. § 60-303(d)(1) (party may be served at residence by leaving a copy of the process and petition "at the dwelling house or usual place of abode of the person to be served with some person of suitable age and discretion residing therein").  Specifically, the process server left the summons and complaint at a particular address in Lenexa, Kansas, with defendant Aguirre Rubi's nineteen-year-old son, Durwin Josue Aguirre Flores, who lives there.  It is undisputed that defendant's son qualifies as a person of suitable age and discretion who resides there.  The parties' point of dispute is whether the Lenexa address qualifies as defendant Aguirre Rubi's "dwelling house or usual place of abode" because, although he once lived at the Lenexa address (for example, he lived there at the time of the incident that gave rise to this lawsuit on February 10, 2006), he moved to Honduras in May of 2007.  Consequently, defendant Aguirre Rubi asks the court to quash service on the grounds that at the time service was attempted approximately seven months later in December of 2007, the Lenexa address was not his dwelling house or usual place of abode.

Whether a particular place is a person's "usual place of abode" is a question of fact. *First Nat'l Bank & Trust Co. v. Ingerton*, 207 F.2d 793, 795 (10th Cir. 1953); *see also* 4A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1096, at 521 (3d ed. 2002) ("Despite the length of time these words have been a part of federal practice, the judicial decisions do not make clear precisely what they mean and the facts of a particular case often prove to be crucial.").  Thus, the court turns to an examination of the factual record that bears on this issue.

In support of defendant Aguirre Robi's motion to quash, he submitted an affidavit from Lesbia E. Flores Matute, his common law wife who resides at the Lenexa address. She states that defendant Aguirre Rubi "moved to Honduras on May 17, 2007, and has no known plans to return" to the Lenexa address. She further states that when the summons and complaint were left with her son at the home, defendant Aguirre Rubi did not reside there.

In response to the motion, plaintiff has submitted the deposition testimony of Mr. Aguirre Flores, defendant's son who accepted service on that day. According to Mr. Aguirre Flores, his father operated the cleaning business under a contract that he had with LabOne (now Quest Diagnostics) and, in March of 2007, Mr. Aguirre Flores took over the business. Following is his testimony concerning the dialogue that occurred when the process server came to the door on that day:

> A. He asked for my dad. He came to the door, he said, Is Roberto here? And I'm, like, No, he's not here. Then he handed me the -- I told him I was his son. He handed me the letter and he was like, Well, just make sure you read this, and he left.
> * * * *
> Q. Did you tell the gentleman it was Roberto's address?
> A. Uh-huh, **I did tell him**.

Dep. of Durwin Josue Aguirre Flores at 14:21 - 15:19 (emphasis added). According to Mr. Aguirre Flores, defendant Aguirre Rubi does not continue to receive money from the business. Defendant Aguirre Rubi still owns a Toyota vehicle here; he left it here for use in the business; he left it here under his name; and Ms. Flores Matute uses it because Mr. Aguirre Flores cannot get a driver's license. Since defendant Aguirre Rubi left, Mr. Aguirre Flores has talked to him about two or three times per month about the business. They

continue to receive bills at the Lenexa address in defendant Aguirre Rubi's name and the utilities there are still in his name. Other than the Toyota, defendant Aguirre Rubi did not leave any other personal items at the Lenexa address and he cannot return because he is an illegal alien. Mr. Aguirre Flores does not have a current address, cell phone number, or home phone number for his father and his father is "constantly moving over there." *Id.* at 25:13. The money that Quest Diagnostics pays for cleaning services is direct deposited into defendant Aguirre Rubi's personal bank account, and Mr. Aguirre Flores pays the employees out of that account; his mother signs the checks and has the power to take money out of the account.

Plaintiff also submitted the deposition testimony of Ms. Flores Matute. Ms. Flores Matute testified that she owns the home at the Lenexa address jointly with defendant Aguirre Rubi. It is defendant Aguirre Rubi's last known address, and when he left he did not ask her to transfer or forward his mail to him at another address. When he left, he took his personal items that he was able to carry or pack with him. They continue to receive bills at the Lenexa address in defendant Aguirre Rubi's name such as bills for utilities, insurance, and mortgage payments. He left the Toyota vehicle, clothes that he could not take with him because he did not have enough room in his luggage, and furniture that he and Ms. Flores Matute had bought together. He has not occupied the Lenexa address, slept there, or eaten meals there since he left in May of 2007. Ms. Flores Matute went to Honduras in June of 2007 when her father passed away, and she saw defendant Aguirre Rubi while she was there. According to Ms.

4

Flores Matute, the defendant came to where she was in Cortez. When asked if defendant Aguirre Rubi was living in Cortez, she responded as follows:

> A. Well, the truth is that he has lots of relatives in Honduras and he visits or he goes from one place to another.
> \* \* \* \*
> Q. . . . So since he went to Honduras in May or June of 2007, he has moved around?
> A. No. He doesn't stay in one place but he is a hard-working man and he's just looking for jobs.
> Q. So he has moved back and forth between various places; correct?
> A. Yes, but it's always Honduras.

Dep. of Lesbia Flores Matute at 23:19 - 24:5. She no longer considers her house to be the place where defendant Aguirre Rubi lives or resides.

Plaintiff has also submitted an affidavit from the process server himself, Robert Rowland. According to Mr. Rowland, when he delivered the summons and complaint to the Lenexa address, he was greeted by Mr. Aguirre Flores. Mr. Aguirre Flores spoke English. He told Mr. Rowland that he was defendant Aguirre Rubi's son and that the Lenexa address was defendant Aguirre Rubi's address.

The court evaluates these facts mindful that the purpose of Rule 4(e) is to insure that service is reasonably calculated to provide a defendant with actual notice of the action. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (due process requires that "notice be reasonably calculated, under all the circumstances," to provide parties with notice of pending action); *see also Sheldon v. Fettig*, 919 P.2d 1209 (Wash. 1995) (en banc) (term "usual place of abode" refers to the place at which the defendant is most likely to receive notice of pendency of suit). To that extent, defendant Aguirre Rubi

5

raises some legitimate considerations as to why the Lenexa address should not be considered his usual place of abode. He left the residence to move to Honduras approximately seven months before the attempted service. When he left, he took with him whatever personal items of his that he was able to carry or pack. He was an illegal alien during the many years he was in this country, and he has no known plans to return.

Notwithstanding these facts, there are more powerful considerations which lead the court to believe that the Lenexa address nonetheless remained his usual place of abode because it was the place at which he was most likely to receive notice of the pending lawsuit. Chief among these considerations is his close family ties to the Lenexa address. His common law wife and his son continue to reside at the Lenexa address and there is no evidence of marital discord. In fact, defendant Aguirre Rubi came to see Ms. Flores Matute in Cortez when she went to Honduras. *See Rosa v. Cantrell*, 705 F.2d 1208, 1214 (10th Cir. 1982) ("presence of family . . . certainly carries a good deal of weight"; collecting cases); *see also Bull v. Kistner*, 135 N.W.2d 545, 549 (Iowa 1965) (noting that for purposes of service the usual place of abode of a married man is prima facie the home where his wife and family reside); *Holtberg v. Bommersbach*, 52 N.W.2d 766, 769 (Minn. 1952) (same). She lives in a house that is jointly owned by the two of them; it is filled with furniture they purchased together; she receives basic household bills there in his name; she pays them out of a checking account in his name; and she drives an automobile that is owned by him. Although Ms. Flores Matute professes that defendant Aguirre Rubi has no known plans to return, he continues to call frequently and has not severed his relations with them such that it could be

inferred that he and his wife are estranged. Furthermore, his son told the process server that he lived there. Thus, defendant Aguirre Rubi has retained a nexus to the Lenexa address that is sufficient to afford a reasonable opportunity to receive notice. *See Blittersdorf v. Eikenberry*, 964 P.2d 413, 415 (Wyo. 1998) ("Former residence may be the 'usual place of abode' if a nexus to the residence is retained, sufficient to afford a reasonable opportunity to receive notice.").

It has been held that the usual place of abode must be taken to mean the center of one's domestic activity such that service with a family member is reasonably calculated to come to one's attention within the statutory period for a defendant to appear. *See Sheldon*, 919 P.2d at 1213. That is precisely what occurred here. Service of process was left at the Lenexa address, which appears to be the center of defendant Aguirre Rubi's domestic activity, on December 8, 2007. His answer was due December 31, 2007, and his attorney filed his first document in the case only one business day later on January 2, 2008, seeking an extension of time to file his answer out of time. Thus, it seems that the attempted service did come to defendant Aguirre Rubi's attention within the statutory time period to appear.

Defendant Aguirre Rubi's transient and itinerant lifestyle in Honduras since leaving the Lenexa address also weighs in favor of finding that the Lenexa address remained his usual place of abode notwithstanding his departure. On this point, the court is persuaded by the courts' reasoning in *National Development Co. v. Triad Holding Corp.*, 930 F.2d 253 (2d Cir. 1992), and *Skidmore v. Green*, 33 F. Supp. 529 (S.D.N.Y. 1940). In *National Development Company*, the process server left a copy of the summons and complaint with

the defendant's housekeeper at his apartment on Fifth Avenue in New York. The defendant was staying at the apartment on the day in question, but had a compound in Saudi Arabia that he considered to be his domicile. He stayed at that compound three months of the year and spent the remaining nine months traveling, spending his time at twelve other locations around the world including a "home" in Spain and "houses" in Rome, Paris, and Monte Carlo. The court held that the New York apartment had "sufficient indicia of permanence" to make it his "dwelling house or usual place of abode" because he owned and furnished it, listed it as one of his residences on a bail application, and was actually living there on the day in question. *See* 930 F.2d at 257. The court reasoned that "[s]urely, with so itinerant a defendant . . . , plaintiff should not be expected to do more." *Id.* In *Skidmore*, the summons and complaint were left with the defendant's sister-in-law at a house owned by the defendant's brother in New York where the defendant had resided temporarily, though never permanently. The defendant was a retired police officer who spent most of his time traveling about the country in a car and trailer, taking "very leisurely" trips where he would spend weeks at various stop-over points. The court held that he was properly served because his brother's house in New York was "the only 'dwelling house or usual place of abode' which he ha[d] at the present time." 33 F. Supp. at 529-30. Although he did not reside there permanently, "so far as the migratory nature of his life permits of any place or abode or dwelling house, it [was] the house in . . . New York." *Id.* at 530.

While the court certainly recognizes distinctions between *National Development Co.* and *Skidmore* as compared to the facts of this case, here defendant Aguirre Rubi's

8

itinerant lifestyle is coupled with close family ties to the Lenexa address and a lack of evidence that he has established a residence at some other place. Under these circumstances, the court is not persuaded that the affidavit submitted by Ms. Matute Flores (which, notably, furthers her own interests) that defendant Aguirre Rubi no longer lives there and has no known plans to return is sufficient to overcome the contrary evidence. *Cf. Rosa*, 705 F.2d at 1214 (defendant's statement that he did not live with his wife was "not enough" where the defendant had left the family residence and, among other things, there was no basis for inferring that he had established a place of residence at some other place). It is defendant Aguirre Rubi's retained nexus to and indicia of permanence associated with the Lenexa address that leads the court to believe that, insofar as his life permits of any dwelling house or usual place of abode, the record does not show that place to be anywhere other than the Lenexa address. This combination of facts distinguishes this case from the facts of the cases relied on by defendant Aguirre Rubi, *Commodities Future Trading Comm'n v. Wall Street Underground, Inc.*, 221 F.R.D. 554, 556-57 (D. Kan. 2004), and *Grimmett v. Burke*, 21 Kan. App. 2d 638, 906 P.2d 156 (1995). Accordingly, the court holds that the Lenexa address was his usual place of abode and, consequently, the service of process was effective.

In so holding, the court is fully cognizant of the potential implications associated with the fact that defendant Aguirre Rubi was an illegal alien while he was here and, therefore, his departure from the country could make re-entry difficult. But, the court discounts his reliance on this consideration because he uses this fact to justify his argument that the Lenexa address is not his usual place of abode because he has "no ability to return as he was here as

an illegal alien." Def.'s Reply Mem. (doc. #33), at 2. This justification is flawed because aside from what the law says on this issue, the illegal entry of immigrants into this country is not at all unusual and, furthermore, he has not shown that he is unable to re-enter the country legally. And, notably, he does not argue that he will be unable to defend this lawsuit. Consequently, under the facts and circumstances presented, defendant Aguirre Rubi has not raised any argument at this procedural juncture that would lead the court to believe that this consideration alone warrants invalidating service of process that is otherwise effective.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Quash Service of Process (doc. #18) is denied.

**IT IS SO ORDERED** this 7th day of April, 2008.

                                        s/ John W. Lungstrum
                                        John W. Lungstrum
                                        United States District Judge