## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**EBONY COWHERD,**

    **Plaintiff,**

        v.                                  Case No. 07-2558-JWL

**ROBERTO AGUIRRE RUBI, et al.,**

    **Defendants.**

## MEMORANDUM AND ORDER

In this lawsuit plaintiff Ebony Cowherd asserts claims against the janitorial and cleaning services personnel at her place of employment, where she slipped and fell on a wet floor. One of the defendants, Roberto Aguirre Rubi, moved to quash service of process and the court denied his motion. *See Cowherd v. Rubi*, Case No. 07-2558, 2008 WL 941632, at *1-*5 (D. Kan. Apr. 7, 2008). This matter is now before the court on Mr. Aguirre Rubi's Motion to Reconsider (doc. 46) the court's Memorandum and Order denying his motion to quash. Defendant Aguirre Rubi contends that reconsideration is necessary to correct clear error or prevent manifest injustice. As explained below, the court disagrees and finds that the arguments he now raises are either a rehash of previously rejected arguments or they are based on factual allegations that he could have, but did not, raise previously. Accordingly, his motion to reconsider is denied.

A motion seeking reconsideration of a non-dispositive order must be based on "(1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice." D. Kan. Rule 7.3(b). Reconsideration is also appropriate where a court "has obviously misapprehended a party's position on the facts or the law." *Hammond v. City of Junction City*, 168 F. Supp. 2d 1241, 1244 (D. Kan. 2001). A motion to reconsider is not an opportunity to rehash previously rejected arguments or to offer new legal theories or facts. *See Theno v. Tonganoxie Unified Sch. Dist. No. 464*, 377 F. Supp. 2d 952, 976 (D. Kan. 2005). Whether to grant or deny a motion to reconsider is committed to the district court's sound discretion. *Wright ex rel. Trust Co. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1235 (10th Cir. 2001).

Defendant Aguirre Rubi raises a variety of arguments as to why he believes that reconsideration is warranted. First, he argues that his lifestyle in Honduras is not as "transient and itinerant" as plaintiff portrayed. In support of this argument, he cites deposition testimony from Lesvia Flores Matute which, notably, predates the filing of his reply brief on the original motion but yet he did not submit those particular pages from her deposition at that time. He also now states that he has provided counsel with an address at which he can receive mail and which he usually occupies; this, too, is not something that he told the court in his original motion or original reply brief. He claims that in the court's prior Memorandum and Order the court incorrectly assumed that he received notice of the lawsuit within the statutory time period for him to appear. In support of this argument, counsel explains in Mr. Aguirre's current motion that he came to be involved in this lawsuit through

2

defendant Rubi's insurance company, which received notice from Ms. Flores Matute after the summons and petition were left at the Lenexa address with her son. This argument is also new and, additionally, the argument that Mr. Aguirre Rubi did not receive notice of the lawsuit from his son or common law wife is flatly controverted by the record submitted by Mr. Aguirre Rubi himself in connection with his motion to reconsider. Specifically, on page 6 of Ms. Flores Matute's deposition, she testified that Mr. Aguirre Rubi was aware of this lawsuit "because I communicated this to him as soon as I had the information, as soon as I received the papers – or my son received the papers." The interpreter explained that "she says that once she received the papers, she mentioned that to Mr. Matute (meaning, Mr. Aguirre Rubi) because she was at that time on the phone and told him that she has received those papers." Thus, it may well be that counsel for Mr. Aguirre Rubi learned about the lawsuit from Ms. Flores Matute rather than from Mr. Aguirre Rubi, but the record reflects that Mr. Aguirre promptly learned about the lawsuit from Ms. Flores Matute.

Mr. Aguirre Rubi also argues that the court erroneously found that he has close family ties to the Lenexa address because "his common law wife and his son continue to reside at the Lenexa address and there is no evidence of marital discord." According to Mr. Aguirre Rubi, there is evidence of discord in the relationship because Ms. Flores Matute testified in her deposition that she and Mr. Aguirre Rubi were having personal problems at the time he left. In support of this argument, Mr. Aguirre Rubi once again relies on deposition testimony from Ms. Flores Matute that he could have, but did not, submit in connection with his original motion. Furthermore, even though Ms. Flores Matute testified that they were having

3

personal problems at the time Mr. Aguirre Rubi left, Ms. Flores Matute specifically testified (in response to counsel's question "Why did Mr. Rubi leave?") that Mr. Aguirre Rubi left because his mother was very sick and "he was afraid that he was going to not be able to see his mother before she die, and she was crying and crying continuously asking for his presence, so that's why he went over there."  In other words, he left to visit his dying mother, not because of whatever problems he may have been having with Ms. Flores Matute.  Mr. Aguirre Rubi also suggests that Ms. Flores Matute "could best be described as an 'ex-common law wife,' if such a thing existed under Kansas law."  Again, however, he did not raise this argument in his original reply brief.  Plaintiff characterized Ms. Flores Matute as Mr. Aguirre Rubi's common law wife in the original response brief, and yet Mr. Aguirre Rubi did not dispute that characterization until now.

Mr. Aguirre Rubi also argues that the court improperly considered the affidavit of the process server, Robert Rowland.  His logic on this point is that on the return of service, Mr. Rowland checked the box stating that the summons and petition were "served **personally** on the defendant" (emphasis added) whereas his later affidavit explained that he gave the summons and petition to Mr. Aguirre Rubi's son, defendant Durwin Aguirre.  Defendant Aguirre Rubi argues that, because of this discrepancy, the court should have discredited his affidavit.  This argument is without merit because the court did not rely solely on Mr. Rowland's affidavit to conclude that service was accomplished by leaving a copy of the summons and complaint at Mr. Aguirre Rubi's dwelling house or usual place of abode. The record submitted in connection with the original motion contained ample evidence that this

is what occurred. Ms. Flores Matute stated in her affidavit that a copy of the summons and petition were left at her home with her son, Mr. Aguirre. And, Mr. Aguirre testified the same thing in his deposition. Thus, the fact that Mr. Rowland's affidavit stated the same thing was not particularly remarkable. Furthermore, the parties' arguments were based on the factual premise that Mr. Aguirre Rubi was served by leaving a copy of the summons and complaint at Mr. Aguirre Rubi's dwelling house or usual place of abode. The only contradiction in the record was the return of service. Thus, it is clear that the process server, Mr. Rowland, simply checked the wrong box on the form. The return of service merely serves as prima facie evidence that service was validly performed. *See Blair v. City of Worcester*, 522 F.3d 105, 111 (1st Cir. 2008); *S.E.C. v. Internet Solutions for Business, Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007); *Homes v. Jones-Bey*, 415 F.3d 748, 752 (7th Cir. 2005). Here, the method of service identified in the return of service was controverted by ample other evidence in the record – including the process server's own later affidavit – showing that Mr. Aguirre Rubi was served by another method of service. To the extent that counsel for Mr. Aguirre Rubi feels aggrieved by this discrepancy, he can ask the court to require plaintiff to file an amended return of service. *See* Fed. R. Civ. P. 4(*l*) ("The court may allow proof of service to be amended.").

In Mr. Aguirre Rubi's next set of arguments, he contends that the court erroneously ignored the "binding authority" of *Commodities Future Trading Commission v. Wall Street Underground, Inc.*, 221 F.R.D. 554, 556-57 (D. Kan. 2004), and *Grimmett v. Burke*, 21 Kan. App. 2d 638, 906 P.2d 156 (1995). He criticizes the court for "mention[ing] and dismiss[ing

5

these cases] in a rather cursory fashion . . . despite their overwhelming analogy to the present case." The first flaw in his logic is that neither of these two opinions are binding precedent on this court. *Commodities Future Trading Commission* is a district court opinion and, as such, it is not treated as binding precedent in any other case. *See In re Executive Office of President*, 215 F.3d 20, 24 (D.C. Cir. 2000) (district court decisions do not establish the law of the circuit or even the law of the district); *Anderson v. Romero*, 72 F.3d 518, 525 (7th Cir. 1995) (district court decisions have no precedential weight); *Ass'n of Cmty. Orgs. for Reform Now (ACORN) v. Edgar*, 880 F. Supp. 1215, 1218 (N.D. Ill. 1995) (same); *IBM Credit Corp. v. United Home for Aged Hebrews*, 848 F. Supp. 495, 497 (S.D.N.Y. 1994) (same). The other case relied on by Mr. Aguirre Rubi, *Grimmett*, is binding precedent only as to the application of Kansas law. Here, leaving a copy of the summons and complaint at Mr. Aguirre Rubi's "dwelling house or usual place of abode" was a method of service authorized by federal law, *see* Fed. R. Civ. P. 4(e)(B), and the Supreme Court has specifically held that the federal rule controls in diversity actions over state statutes under the *Erie* doctrine. *Home-Stake Production Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1016 n.2 (10th Cir. 1990) (citing *Hanna v. Plumer*, 280 U.S. 460 (1965)). Thus, these two cases – just like the others relied on by the court in its original Memorandum and Order – are properly regarded as persuasive precedent, not binding precedent. As such, they have precedential value only to the extent that the court finds them persuasive on material issues in this case. The court simply noted that it found these two cases relied on by Mr. Aguirre Rubi to be unpersuasive because they are distinguishable on their facts. *See Cowherd*, 2008 WL 941632, at *5.

6

To explain these distinctions for Mr. Aguirre Rubi, the court begins with *Commodities Future Trading Commission*. There, the plaintiff attempted to effect service by leaving a copy of the summons and complaint with a person by the name of Barbara Williams (not the defendant) at 1828 University Place, Sarasota, Florida, because the defendant's unexpired Florida driver's license listed it as his address, the defendant maintained two bank accounts that listed 1828 University Place as his address, and most of the mail delivered to the address was addressed to the defendant. 221 F.R.D. at 556. In an attempt to refute the notion that this address was his "dwelling house or usual place of abode," the defendant submitted an affidavit from Ms. Williams which stated that she had possession of the condominium at 1828 University Place since 1993 (plaintiff attempted to execute service on him there ten years later on July 15, 2003), that to the best of her knowledge the defendant had never resided at her address, and that although the defendant's mail is delivered to her address she does not forward that mail to him. *Id.* In addition, the defendant submitted copies of tax returns, another IRS form, and copies of United States Patents from the years 1995 through 2002, all of which listed his Honduran address as his address, thus demonstrating that he abandoned 1828 University Place. *Id.* Under the facts of that case, the court determined that the 1828 University Place address could not be considered the defendant's dwelling house or usual place of abode. *Id.* at 557.

Unlike in *Commodities Future Trading Commission*, the record from Mr. Aguirre Rubi's motion to quash demonstrated that although he left the subject residence in Lenexa, he still owns the home jointly with Ms. Flores Matute and he left his Toyota vehicle there

7

along with furniture that he and Ms. Flores Matute had bought together. They continue to receive bills at the Lenexa address in his name such as bills for utilities, insurance, and mortgage payments. Additionally, he maintained close family ties to the Lenexa address by communicating regularly with his common law wife and son. Thus, this case is different from *Commodities Future Trading Commission* in the sense that Mr. Aguirre Rubi had significant continued family connections to the Lenexa address. Additionally, the facts of this case are different because the defendant in *Commodities Future Trading Commission* had submitted various types of formal documents to the court reflecting his "Honduran address" whereas, here, the record from the motion to quash amply demonstrated a transient and itinerant lifestyle in Honduras such that there was no particular address where plaintiff could deliver the summons and complaint to him there that would be reasonably calculated to give him notice of this lawsuit.

The other case relied on by Mr. Aguirre Rubi, *Grimmett*, is distinguishable for similar reasons. In that case, the defendant Burke did not live at the address where the summons and complaint were left; he had moved and left no forwarding address. 906 P.2d at 161. Indeed, an affidavit from a postal service employee stated that someone else moved into the residence nearly eleven months before the attempted service and the mail carrier had filed a "moved, left no forward card" relative to Burke. *Id.* The Kansas Court of Appeals held that this "clearly indicate[d]" that the summons and complaint were not left at Burke's dwelling house

8

or usual place of abode and therefore the attempted service was invalid. *Id.*[1] As with the defendant in *Commodities Future Trading Commission*, the *Grimmett* case is distinguishable because there was no evidence that the defendant maintained the type of continuing connections to the residence that exist in this case. Plaintiff specifically pointed out these considerations in her original response to Mr. Aguirre Rubi's original motion to quash and yet Mr. Aguirre Rubi did not direct the court's attention to facts to the contrary, choosing instead to rely primarily on the fact that Mr. Aguirre Rubi had left the Lenexa address with no known plans to return. This approach, of course, the court found unpersuasive because the facts presented by the plaintiff made this case distinguishable from *Commodities Future Trading Commission* and *Grimmett*.

Mr. Aguirre Rubi's final argument is that the attempted service was not in "substantial compliance" with any method of service of process. *See* K.S.A. § 60-204. This argument, however, is irrelevant because the court's ruling did not rest on the Kansas substantial compliance statute. Rather, the court held that Mr. Aguirre Rubi was, in fact, validly served at his dwelling house or usual place of abode.

For all of these reasons, the court believes that it correctly decided the issue presented based on the factual record presented by the parties in connection with Mr. Aguirre Rubi's original motion to quash. As the court pointed out in its original Memorandum and Order, whether a particular place is a person's dwelling house or usual place of abode is a question

---

[1] The remainder of the Kansas Court of Appeals' decision in *Grimmett* deals with other legal issues not presented in this case.

of fact. *First Nat'l Bank & Trust Co. v. Ingerton*, 207 F.2d 793, 795 (10th Cir. 1953); *see* 4A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1096, at 521 (3d ed. 2002) ("Despite the length of time these words have been a part of federal practice, the judicial decisions do not make clear precisely what they mean and the facts of a particular case often prove to be crucial."). In this case, the court carefully considered the factual record presented by the parties in connection with Mr. Aguirre Rubi's motion to quash. Simply put, that record demonstrated that even though Mr. Aguirre Rubi purportedly left the Lenexa address with no known plans to return, that address nonetheless remained his dwelling house or usual place of abode because of his continued connections with the Lenexa address and his failure to persuade the court that he had established another residence with any indicia of permanence. Accordingly, reconsideration is not necessary to correct clear error or prevent manifest injustice.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant Aguirre Rubi's Motion to Reconsider (doc. 46) is denied.

**IT IS SO ORDERED** this 3rd day of July, 2008.

                s/ John W. Lungstrum
                John W. Lungstrum
                United States District Judge